[L. A. No. 17051.    In Bank.—July 11, 1939.]

ISRAEL FEINBERG et al., Respondents, v. ONE DOE COMPANY (a Corporation) et al., Defendants; LEO S. VOGEL et al., Appellants.

David L. Sefman, Jerome D. Rosenfield and Fred Vogel for Appellants.

J. H. O'Connor, County Counsel, Douglas De Coster, Assistant County Counsel, Charles J. Katz and Alfred Gitelson for Respondents.

CURTIS, J.—Application for writ of *supersedeas.*

In this controversy between representatives of the International Ladies' Garment Workers Union, a voluntary unincorporated association, and the defendants, engaged in the

manufacturing of ladies' coats and suits, and doing business as copartners under the firm name of Evelyn Coats, and also "Vogel Bros." an award was made by an arbiter, officially designated in a written agreement between the International Ladies' Garment Workers Union, and the Los Angeles Coat and Manufacturing Association, as the "Impartial Chairman". This agreement which had been entered into by the respective parties for the purpose of securing general stabilization of the cloak and suit industry, contained, in addition to certain provisions relative to hours, wages, and working conditions, a method for the arbitration of any difficulties arising between the different factors of the industry. This plan provided that if, following a presentation of a grievance, no adjustment could be amicably reached by the executive director of the Manufacturers' Association, and the manager of the union, the question should be submitted to a joint committee consisting of two persons designated by the Manufacturers' Association and two persons designated by the union. If the joint committee could not agree upon a proper settlement or adjustment of such dispute by a majority of three out of four persons, then the matter should be decided by an impartial chairman whose decision should be final and binding upon all the parties to said agreement. A controversy arose over the continuance in employment by the defendants of an employee named Amelia Greenwood, a former member of one of the local unions comprising the International Ladies' Garment Workers Union, but who had been expelled for participation in the organization of an independent rival union. The arbiter in his award held that the defendants had signed said agreement and were bound by the terms thereof which required the firm to employ only union members in good standing in the International Ladies' Garment Workers Union, that Amelia Greenwood was not a member of the union, having been expelled on August 3, 1938, and directed said defendant, Evelyn Coat & Suit Company, "to release Amelia Greenwood from further employment", within forty-eight hours. The defendant company failed to comply with said award and failed to release Amelia Greenwood from their employ. The representatives of the International Ladies' Garment Workers Union thereupon sought and secured in the Superior Court in and for the County of Los Angeles an order confirming the award of the arbiter and enjoining and re-

straining the defendants, "from employing, or continuing to employ, or hereafter employing the said Amelia Greenwood while she is not a member in good standing of said International Ladies' Garment Workers Union". An appeal from said judgment and order confirming the award of the arbiter was duly perfected by said defendants to this court. Thereafter an order to show cause why they should not be punished for contempt in refusing and failing to obey the order of said court to discharge the said Amelia Greenwood as an employee was issued out of said superior court and served upon defendants. The defendants, as petitioners, then made application to this court for a writ of *supersedeas* to restrain the attempted enforcement by the trial court of said order until the affirmance or reversal of the judgment on appeal. This application is now before us.

The question of the correctness of the decision of the trial court affirming the award of the arbiter is not here involved. The sole question decided is whether the order appealed from was in fact a mandatory injunction, an appeal from which acted as a statutory *supersedeas,* entitling petitioners as a matter of right to the issuance of a writ of *supersedeas* to restrain the superior court from finding defendants guilty of contempt and punishing them therefor.

We are satisfied that such a writ should issue. Although the form of the order appealed from purports to be prohibitive in that defendants are enjoined and restrained "from employing, and continuing to employ, or hereafter employing Amelia Greenwood while she is not a member in good standing of said International Ladies' Garment Workers Union", it is quite obvious that said order is in its essence and effect a mandatory injunction. It is an order compelling affirmative action on the part of the defendants. Inasmuch as Amelia Greenwood at the time of the issuance of the order was already in the employ of the defendants, and the very controversy arose out of the *continuance* in employment of said Amelia Greenwood, it is apparent that the result intended to be accomplished by the issuance of said order was the compulsory release of said Amelia Greenwood from employment by the defendants. In short, the order directed and commanded the defendants to discharge said employee. This conclusion is strongly fortified by the fact that the award

of the arbiter which the judgment confirmed did not contain the prohibitive language enjoining and restraining defendants "from employing . . . or hereafter employing", Amelia Greenwood, but only contained the definite mandate, couched in affirmative language, directing the defendants "to release Amelia Greenwood from further employment". It is, of course, elementary that this court will not be bound by the form of the order but will look to its substance to determine its real nature. (*Clute* v. *Superior Court,* 155 Cal. 15 [99 Pac. 362, 132 Am. St. Rep. 54] ; *Mark* v. *Superior Court,* 129 Cal. 1 [61 Pac. 436] ; *Ohaver* v. *Fenech,* 206 Cal. 118 [273 Pac. 555].) ▇ It is equally well established that a mandatory injunction is automatically stayed by the perfecting of an appeal and that thereafter the lower court is without jurisdiction to compel obedience to the order from which the appeal has been taken. (*Ohaver* v. *Fenech, supra.*) ▇ In view of the fact that the gist of the whole controversy in the instant case was the continuance or noncontinuance of said employee in the employment of defendants, and in view of the fact that the order appealed from was directed solely to this issue, no contention may be legitimately made that the order although mandatory was only ancillary to or subsidiary to another or main order which was prohibitive and therefore not automatically stayed by the perfecting of the appeal.

▇ The writ herein sought is the writ of *supersedeas,* and we are satisfied that this is the proper writ to be issued in the instant case. There would, of course, be no need for the issuance of any writ if the lower court was not mistakenly attempting to enforce obedience to the order appealed from. (*Foster* v. *Foster,* 5 Cal. (2d) 669 [55 Pac. (2d) 1175] ; *Joerger* v. *Mt. Shasta Power Corp.,* 214 Cal. 630 [7 Pac. (2d) 706].) But the ground of the application to this court for the writ of *supersedeas* is the fact that the lower court has already issued an order to show cause why appellants should not be found guilty of contempt for refusal to comply with the order appealed from.

▇ Respondents oppose the issuance of this particular writ upon the ground that the writ of *supersedeas* being limited in its scope and effect to a restraint of official action, and the improper use of the court's process, such writ is not the proper remedy to restrain a proposed contempt proceed-

ing based upon a judgment which is self-executing. It is argued that no process is required for the enforcement of the order appealed from, and hence there is nothing upon which the *supersedeas* can act. The premise of respondents' argument, that the order appealed from is self-executing, is not correct. The term "self-executing" is practically self-defining, and obviously denotes a judgment that accomplishes by its mere entry the result sought, and requires no further exercise of the power of the court to accomplish its purpose. The order appealed from does not purport in and of itself to terminate the status of employer and employee. It, in effect, commands the defendants to release the said employee from their employment. And, in view of the fact that the said employee is not a party to the action, we would be reluctant to hold, even if it could be so held, that the mere entry of the order appealed from would have the effect of changing her status. It follows, therefore, that the use of a process of the lower court is necessary to secure compliance with the order, and to effectuate the result sought to be accomplished by it. ▮ Proceedings in contempt are as much an exercise of the power of the lower court as are the issuance of execution by the court, or the appointment of a receiver. (*Clute* v. *Superior Court, supra; Wolf* v. *Gall,* 174 Cal. 140 [162 Pac. 115].)

In the cases of *Smith* v. *Smith,* 201 Cal. 217, 218 [256 Pac. 419], *Goodall* v. *Brite,* 1 Cal. (2d) 583 [36 Pac. (2d) 190], and *Sparling* v. *Sparling,* 94 Cal. App. 593, 594 [271 Pac. 548], writs of *supersedeas* were issued under similar circumstances to stay enforcement by the lower court by contempt proceedings of decrees and orders appealed from.

▮ As we are of the opinion, that the perfecting of the appeal by appellants operates to automatically stay proceedings in the court below, it is unnecessary for us to balance or weigh the arguments with reference to the possible irreparable injury to appellants or respondents as would be necessary if the question of the issuance of the writ was solely a matter of our discretion.

Let the writ issue as prayed for.

Edmonds, J., Shenk, J., and Houser, J., concurred.